THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio corporation<br><br>Plaintiff,<br><br>v.<br><br>CARFAX, INC. a Pennsylvania corporation<br><br>Defendant. | Case No.: 11-CV-8927<br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiff, Experian Information Solutions, Inc. ("Experian"), by and through its undersigned attorneys, states for its Complaint against Defendant, CARFAX, Inc. ("CARFAX"), the following:

### The Parties

1. Experian is an Ohio corporation with its corporate offices and principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian also maintains corporate offices in Schaumburg, Illinois. Among other things, Experian markets and sells vehicle history reporting ("VHR") products and services under the trademark "AutoCheck." AutoCheck is used by consumers and dealers in the used car shopping process.

2. CARFAX is a Pennsylvania corporation with its corporate offices and principal place of business located at 5860 Trinity Parkway, Suite 600, Centerville, Virginia 20120. CARFAX sells a VHR product and service that directly competes with AutoCheck.

1

## Nature of Action

3. Experian brings this civil action against CARFAX asserting claims of: (1) tortious interference with business expectancy; (2) trade libel/false light/business disparagement; (3) defamation *per se*; and (4) defamation *per quod*. The gravamen of Experian's Complaint is that CARFAX knowingly and willfully made false, disparaging statements about Experian's AutoCheck product and service to potential clients of Experian, including but not limited to, Subaru of America, Inc. ("Subaru"). These statements were false when they were made, CARFAX knew they were false, and CARFAX made them with malice and with the intention of gaining an unlawful competitive advantage over Experian. Specifically, CARFAX made these statements to interfere with Experian's business opportunity with Subaru. As a result of CARFAX's conduct, Subaru reneged on its commitment to contract with Experian and Experian suffered substantial damage.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332. Experian and CARFAX are citizens of different states and Experian's damages are in excess of $75,000.

5. The Court has personal jurisdiction over CARFAX because it transacts business in the State of Illinois, maintains a registered agent in the State of Illinois, and has purposefully availed itself to the benefits of doing business in the State of Illinois.

6. Venue is proper within the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(a) & (c).

**Facts**

7. As noted above, Experian offers the AutoCheck VHR product and service for car dealerships and prospective purchasers of used automobiles across the country.

8. CARFAX also offers a similar VHR product and service, which generates a "CARFAX Report" for car dealerships and prospective purchasers of used automobiles across the country.

9. CARFAX is Experian's primary competitor in the VHR industry.

10. For a number of years, CARFAX had a contract with Subaru, which obligated Subaru's dealerships to use CARFAX Reports when certifying a vehicle as part of Subaru's Certified Pre-Owned ("CPO") Program.

11. In turn, these Subaru dealerships furnished CARFAX Reports to their prospective customers who were interested in purchasing Subaru CPO vehicles available for sale at their dealerships.

12. Experian and CARFAX directly compete to secure these CPO-VHR Contracts.

13. By its terms, the contract between CARFAX and Subaru was up for renewal in February 2012. For a number of months preceding the renewal date of the contract, Experian sought to secure a CPO-VHR Contract with Subaru at the conclusion of Subaru's then-existing contractual relationship with CARFAX. Experian was aware that a number of Subaru dealerships had complained about CARFAX to Subaru management.

14. After months of discussion and negotiation, Subaru decided to replace CARFAX with Experian. On October 13, 2011, Subaru formally gave notice to CARFAX that

3

it would not renew its CPO-VHR Contract with CARFAX and that Subaru would enter into a CPO-VHR Contract with Experian. Attached hereto as **Exhibit A** is a true and correct copy of an email thread between Subaru and Experian in which Subaru indicates its intent to terminate its relationship with CARFAX and contract with Experian pursuant to the terms outlined in the email.

15. As a result of this notice, CARFAX officials flew to Subaru's offices in Cherry Hill, New Jersey on October 17, 2011 and attempted to persuade Subaru to stay with CARFAX.

16. Upon information and belief, during this meeting Subaru reiterated to CARFAX that it had already made its decision to switch to Experian and that it would execute a CPO-VHR Contract with Experian once its CPO-VHR Contract with CARFAX expired. CARFAX left the meeting unable to persuade Subaru to stay with CARFAX.

17. Indeed, on October 19, 2011, two days after the CARFAX-Subaru meeting, Subaru reaffirmed its commitment to contract with Experian. Specifically, Subaru requested Experian's logo to incorporate into Subaru's marketing material. Attached hereto as **Exhibit B** is a true and correct copy of an email from Subaru to Experian requesting Experian's logo to include on Subaru's promotional material.

18. On October 21, 2011, CARFAX sent Subaru a letter clearly intended to dissuade Subaru from executing a CPO-VHR Contract with Experian. Attached hereto as **Exhibit C** is a true and correct copy of the October 21, 2011 letter that CARFAX sent to Subaru.

19. This October 21, 2011 letter contained numerous false, misleading, and derogatory statements about Experian and its AutoCheck product. Such statements include, but are not limited to, the following:

   a. Experian is losing accounts with other vehicle manufacturers to CARFAX.

   b. Undermining Subaru's contractual negotiations with Experian by implying that other dealers received more favorable pricing terms than the terms to which Experian and Subaru agreed.

   c. The VHR data used by CARFAX is "vastly superior" and that using "AutoCheck will allow a significant number of problem vehicles into [Subaru's] program."

   d. Subaru pursues DAB members "to rabble rouse and stir up discontent in an attempt to undermine [CARFAX's] partnerships."

   e. 38% of used car shoppers say they will only accept a CARFAX VHR.

   f. Mischaracterizing Experian's business relationship with Nissan and Infiniti with respect to these manufacturers' CPO Programs by stating that 66% of Nissan CPO vehicles and 84% of Infiniti CPO vehicles are listed on Cars.com with a CARFAX Report, which is attributable to the exclusive business relationship that Cars.com had with CARFAX – not because AutoCheck provides an inferior service to Infiniti or Nissan.

   g. AutoCheck "has maybe 15% penetration among Subaru dealers."

   h. "AutoCheck does not have strong brand characteristics and resides in the center of the map with Info4cars and Experian where the brand characteristics are weak."

   i. "Autocheck does not have the same impact, especially online, where the dealer doesn't have the opportunity to explain what an Autocheck report is. Consumers are skittish online and can desert a listing quickly. Carfax helps establish trust and credibility which leads to greater online activity, more leads and ultimately, faster turn."

   j. CARFAX knows that a significant number of consumers, when faced with an unfamiliar brand of VHR will abandon the listing and come to Carfax.com to run the CARFAX report.

   k. The Carfax database today includes more than 9 billion unique pieces of information – the most comprehensive vehicle history database in

5

existence. More than 25 years experience has provided us with business rules to convert raw data into vehicle history information. This means we can yield more usable data from each source

l. CARFAX knows it has "more data, more accident data and more accident detail [than AutoCheck]."

m. Misrepresenting AutoCheck's ability to gather data contained in a VHR by providing an example about a Buick automobile, which implies that this Buick's CARFAX report is more comprehensive than the VHR generated by Experian for the same vehicle.

n. AutoCheck's "auction frame data is highly flawed."

o. "CARFAX has huge advantages in insurance total loss, damage titles, and airbags deployed."

p. "There is a good chance AutoCheck will miss a problem vehicle, if this happens, there is a significant probability the consumer will see the problem on CARFAX's report. This could cause problems (happened to Nissan this year)."

q. CARFAX "is the best VHR for screening CPO vehicles."

Each of the above statements about AutoCheck was false and/or misleading, and CARFAX knew them to be false and/or misleading when it made them.

20. CARFAX's October 21, 2011 letter was sent with the specific purpose of disparaging Experian and its AutoCheck product to dissuade Subaru from following through on its prior commitment to contract with Experian.

21. On October 24, 2011, three days after the date on the CARFAX letter, Subaru informed Experian that it was putting the brakes on its switch to Experian. Instead, Subaru said it now wanted to survey its dealers (at the suggestion of CARFAX) before switching to Experian to obtain its dealers' opinions about which VHR service they preferred – Experian or CARFAX.

6

22. But for the CARFAX letter, Subaru would not have issued this survey. Indeed, the survey that Subaru issued was in direct response to the false and disparaging statements about Experian that were contained in CARFAX's letter.

23. From late October through mid November of 2011, Subaru collected responses from its dealers to a survey asking whether it should switch from CARFAX to AutoCheck.

24. The survey questions were crafted in a manner designed to elicit biased responses from Subaru's dealers in favor of CARFAX.

25. As a result of this biased survey, Experian was informed that a majority of the Subaru dealers who responded to the survey, expressed a desire to remain with CARFAX rather than switch to AutoCheck.

26. On November 17, 2011, Subaru informed Experian that it had decided to renew its contract with CARFAX rather than honor its prior promise to enter into a CPO-VHR Contract with Experian.

27. This decision by Subaru cost Experian in excess of $2,300,000 in lost revenues directly related to the contract.

**Count I: Tortious Interference with Prospective Economic Advantage**

28. Experian repeats and realleges the preceding paragraphs as if fully set forth herein.

29. Experian had a reasonable expectation of entering into a CPO-VHR Contract with Subaru. Indeed, Subaru confirmed this expectation in writing to Experian.

30. This CPO-VHR Contract would have provided substantial economic benefits to Experian.

7

31. CARFAX had knowledge of Experian's expectation to secure this CPO-VHR Contract with Subaru.

32. CARFAX purposefully interfered with Experian's business expectancy when it visited Subaru to attempt to dissuade Subaru from contracting with Experian, and when it later sent a letter to Subaru which contained false, misleading, and derogatory statements about Experian and its AutoCheck product.

33. CARFAX sent this letter to Subaru with the specific intention of interfering with Experian's legitimate expectancy of securing a CPO-VHR Contract with Subaru. CARFAX made use of these false, misleading and derogatory statements to prevent Subaru from finalizing its decision to switch from CARFAX to Experian.

34. As a direct and proximate result of the false, misleading, and derogatory statements in this letter, Subaru ultimately did not execute a CPO-VHR Contract with Experian as it had previously committed to do.

35. Accordingly, Experian has suffered damages as a result of CARFAX's purposeful interference in Experian's legitimate business expectancy.

WHEREFORE, Experian respectfully requests that this Honorable Court enter judgment in its favor and against CARFAX, Inc. in an amount to be determined at trial, plus pre-judgment interest, and the costs of this suit, including reasonable attorneys fees, and any further relief that this Court deems just and proper.

### Count II: Trade Libel / False Light / Business Disparagement

36. Experian repeats and realleges the preceding paragraphs as if fully set forth herein.

37. CARFAX knowingly and with malice made false statements to Subaru and, upon information and belief, to other third-parties in an effort to disparage and

misrepresent the nature, character, and quality of Experian's goods, services, business methods, and professional integrity.

38. CARFAX's statements concerned Experian's business methods, products and services related to AutoCheck and were interpreted by Subaru and, upon information and belief, by other third-parties to directly relate to Experian's business methods and products.

39. CARFAX's statements disparaged Experian's AutoCheck products and services by falsely describing and mischaracterizing Experian's business methods, performance, and the AutoCheck product and services.

40. The purpose and effect of CARFAX's statements was to injure Experian by hindering its ability to market and sell its AutoCheck products and services to third-parties, including but not limited to, Subaru.

41. As a direct and proximate result of CARFAX's intentional and wrongful disparagement and false statements about Experian's AutoCheck products and services, CARFAX has caused Experian financial harm by, among other things, dissuading Subaru from executing a CPO-VHR Contract with Experian.

42. As a result of CARFAX's unlawful conduct, Experian has suffered substantial financial harm in an amount to be determined at trial.

WHEREFORE, Experian respectfully requests that this Honorable Court enter judgment in its favor and against CARFAX, Inc. in an amount to be determined at trial, plus pre-judgment interest, and the costs of this suit, including reasonable attorneys fees, and any further relief that this Court deems just and proper

### Count III: Defamation *Per Se*

43. Experian repeats and realleges the preceding paragraphs as if fully set forth herein.

44. CARFAX's written and oral statements, including those set forth above, contain false, misleading, and disparaging statements about Experian's AutoCheck products and services.

45. CARFAX's statements prejudiced Experian by implying and/or expressly stating that Experian lacks the ability to adequately perform its business with respect to the AutoCheck product and services.

46. CARFAX's statements are harmful to Experian's reputation, product potential, and business with respect to the AutoCheck product and services.

47. CARFAX's statements were not privileged.

48. Third parties, including Subaru and, upon information and belief, other customers, received, heard, and read these false, deceptive, and misleading statements.

49. Subaru and other third parties who read and heard these statements understood them in a way that defamed Experian and caused injury to Experian's professional reputation with respect to the AutoCheck product and services.

50. These defamatory statements constitute defamation *per se*, as they prejudice Experian and accuse it of lacking ability in its business dealings with respect to the AutoCheck product and services.

51. The purpose and effect of such statements by CARFAX has been to injure Experian by dissuading potential customers, including Subaru, from engaging in business with Experian with respect to the AutoCheck product and services.

52. As a direct and proximate cause of CARFAX's publication of these false, deceptive, misleading, and defamatory statements, Experian has suffered a loss in its

10

business reputation as well as damages based on the lost value of the Subaru CPO-VHR Contract that would have otherwise inured to Experian's benefit.

53. CARFAX knowingly made these false, misleading, deceptive, and defamatory statements, with malice, a willful intent to injure Experian's professional reputation, and with conscious disregard for Experian's rights.

54. As such, Experian is entitled to punitive damages from CARFAX.

WHEREFORE, Experian respectfully requests that this Honorable Court enter judgment in its favor and against CARFAX, Inc. in an amount to be determined at trial, and the costs of this suit, including reasonable attorneys fees, and any further relief that this Court deems just and proper

## Count IV: Defamation *Per Quod*

55. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

56. CARFAX's written and oral statements including, specifically, the October 21, 2011 letter that it published to Subaru contained false, misleading, and disparaging statements regarding Experian's AutoCheck product and services.

57. CARFAX's statements contained in these published communications prejudice Experian and state that it lacks ability in its business dealings with respect to the AutoCheck product and services.

58. CARFAX's statements are harmful to Experian's reputation, product potential, and business with respect to the AutoCheck product and services.

59. CARFAX's statements were not privileged.

60. Third parties, including Subaru, and, upon information and belief, other customers, received, heard, and read these false, deceptive, and misleading statements made by CARFAX regarding the AutoCheck product and services.

11

61. Subaru and, upon information and belief, the third parties who read and heard these statements understood them in a way that defamed Experian and caused injury to Experian's professional reputation with respect to the AutoCheck product and services.

62. The defamatory statements made by CARFAX constitute defamation *per quod*; they directly injure Experian by attacking Experian's professional reputation and accusing Experian's AutoCheck products and services of failing to adequately perform in the VHR industry.

63. The purpose and effect of such statements by CARFAX has been to injure Experian by dissuading potential customers, including without limitation, Subaru, from engaging in business with Experian with respect to the AutoCheck product and services.

64. As a direct and proximate result of CARFAX's publication of these false, deceptive, misleading, and defamatory statements, Experian has suffered a loss in its business reputation as well as special damages based on the lost value of the Subaru CPO-VHR Contract that would have otherwise inured to Experian's benefit.

65. CARFAX has knowingly made these false, misleading, deceptive, and defamatory statements, with malice, a willful intent to injure Experian's professional reputation, and with conscious disregard for Experian's rights.

66. As such, Experian is entitled to punitive damages from CARFAX.

WHEREFORE, Experian respectfully requests that this Honorable Court enter judgment in its favor and against CARFAX, Inc. in an amount to be determined at trial, plus pre-judgment interest, and the costs of this suit, including reasonable attorneys fees, and any further relief that this Court deems just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury on all matters and issues triable by jury.

Dated:  December 16, 2011  Respectfully submitted,

/s/ James B. Barton
One of the attorneys for Plaintiff

**Attorneys For Plaintiff, Experian Information Solutions, Inc.**

MICHAEL BEST & FRIEDRICH LLP
Paul E. Benson
*pebenson@michaelbest.com*
Carrie A. Hall
*cahall@michaelbest.com*
James B. Barton
*jbbarton@michaelbest.com*
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI  53202-4108
Ph:  414.271.6560
Fax:  414.277.0656

017721-0028\10614733.3