UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXPERIAN INFORMATION SOLUTIONS, INC., ) ) ) | |
| Plaintiff, ) ) | No. 11 CV 08927 |
| v. ) ) ) | Judge Edmond E. Chang |
| CARFAX, INC., ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Experian Information Solutions, Inc. alleges that Defendant Carfax, Inc. made statements about Experian that are actionable, under Illinois law, as tortious interference, trade libel / false light / business disparagement, defamation *per se*, and defamation *per quod*. R. 1.[1] Carfax has moved to dismiss the defamation *per se* claim under Federal Rule of Civil Procedure 12(b)(6). R. 10. As explained below, the motion is granted in part and denied in part.

**I.**

At this stage of the litigation, the Court accepts Experian's allegations as true and draws reasonable inferences in its favor. *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S.Ct. 2074, 2079 (2011). Experian is an Ohio corporation with its principal place of business in Costa Mesa, California. R. 1 ¶ 1. Experian markets and sells vehicle history reporting products (*e.g.*, whether a car has been in an accident) under the trademark

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Citation to the docket is "R." followed by the entry number.

"AutoCheck." *Id.* Carfax, a primary competitor to AutoCheck, offers a similar vehicle history reporting product and service, which generates "Carfax Reports." *Id.* ¶¶ 8, 9. Both AutoCheck and Carfax are used by car dealerships and prospective purchasers of used automobiles. *Id.* ¶¶ 7, 8. AutoCheck and Carfax directly compete to secure contracts with automotive manufacturers to generate vehicle history reports for those manufacturers' Certified Pre-Owned Programs. *Id.* ¶¶ 10, 12.

For a number of years, Carfax had a contract in place with Subaru that required Subaru's dealerships to use Carfax Reports when certifying a vehicle as part of its Certified Pre-Owned Program. *Id.* ¶ 10. The contract came up for renewal in February 2012. *Id.* ¶ 13. A few months before the renewal date, Experian began discussions with Subaru in an effort to win the contract, which would dislodge Carfax. *Id.* On October 13, 2011, Subaru formally notified Carfax that it would not be renewing its contract and would instead be using Experian. *Id.* ¶ 14. Carfax did not give up easily, and on October 17, Carfax officials visited Subaru and attempted (but failed) to persuade Subaru to renew their contract. *Id.* ¶¶ 15, 16. On October 19, Subaru reaffirmed its intent to contract with Experian. *Id.* ¶ 17. Still not giving up, on October 21, Carfax sent Subaru a letter intended to dissuade Subaru from contracting with Experian. *Id.* ¶ 18.

Experian alleges that several statements made by Carfax in the October letter were defamatory and false or misleading. *Id.* ¶ 19. Experian identified six of those

statements[2] as defamatory *per se*: (1) "Undermining Subaru's contractual negotiations with Experian by implying that other dealers receive more favorable pricing terms than the terms to which Experian and Subaru agreed," *id.* ¶ 19(b); (2) "The VHR [vehicle history reporting] data used by CARFAX is 'vastly superior' and that using 'AutoCheck will allow a significant number of problem vehicles into [Subaru's] program,'" *id.* ¶ 19(c); (3) Experian "pursues DAB [Dealer Advisory Board] members 'to rabble rouse and stir up discontent in an attempt to undermine [CARFAX's] partnerships," *id.* ¶ 19(d); (4) "AutoCheck does not have strong brand characteristics…," *id.* ¶ 19(h); (5) "AutoCheck's 'auction frame data is highly flawed,'" *id.* ¶ 19 (n); and (6) "There is a good chance AutoCheck will miss a problem vehicle, if this happens, there is a significant probability the consumer will see the problem on CARFAX's report. This could cause problems (happened to Nissan this year)." *Id.* ¶ 19(p).

On October 24, Subaru notified Experian that it was "putting the brakes" on its switch to Experian. *Id.* ¶ 21. In November, after conducting a survey of its dealers, Subaru informed Experian that it had decided to renew its contract with Carfax. *Id.* ¶ 26. Experian then filed this suit against Carfax.

---

[2]Although the complaint identified a number of allegedly defamatory statements, only those statements specifically identified by Experian in its Response Brief as defamatory per se are addressed. *See* R. 20.

## II.

Under the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of

truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679-80.

**III.**

Carfax argues that the statements identified above—those in the October 2011 letter to Subaru—cannot serve as the basis for a defamation *per se* claim. Under Illinois law, "to state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Technology, LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006) (internal citation omitted). A statement is defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992) (citation omitted). A statement is defamatory *per se* if it is "so obviously and materially harmful to the plaintiff that injury to [the plaintiff's] reputation may be presumed." *Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). Illinois law recognizes five categories of defamation *per se*, two of which are relevant here: (1) words implying a party is unable to perform or lacks integrity in performing his or her employment duties; and (2) words imputing a party lacks ability or otherwise prejudices that party in his or her trade, profession or business. *Solaia*, 852 N.E.2d at 839.

But even a statement that is defamatory *per se* might not be actionable if it is unable to overcome the various protections built into the law of defamation. The

5

statement must contain a false *fact*, not merely an *opinion*. *Solaia*, 852 N.E.2d at 840. Statements that do not contain factual assertions are protected under the First Amendment and may not form the basis of a defamation claim. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 455 (Ill. App. Ct. 2010) (internal citation omitted). What's more, if the statement is reasonably capable of an innocent, nondefamatory construction, then the claim fails. *Solaia*, 852 N.E.2d at 839. And the statement must be shown to concern the plaintiff; if the statement can be reasonably interpreted as referring to someone else, there is no liability. *Id.*

Moreover, even if a party is liable for presumed damages, juries and judges do not have free rein to impose presumed damages without limit. There are some established factors to take into account: the number of times the statement is published, the number of readers of the statement, the source of the statement (the more authoritative the deliverer, the greater the damage from the false statement because of the audience's receptiveness to the statement), the severity of the derogatory statement, and the medium by which the statement is delivered. *Brown & Williamson Tobacco v. Jacobson*, 827 F.2d 1119, 1142 (7th Cir. 1987). With these general principles in mind, the Court turns to the specific statements alleged by the Experian to be defamatory *per se*.

A.

First, Experian claims that the statement, "AutoCheck's auction frame data is highly flawed," qualifies as defamation *per se*. R. 1 ¶19(n). Specifically, Experian believes that the statement accuses it of failing to adequately perform in the marketplace and prejudices it as a business. Viewed in the context of the entire letter, the natural and obvious meaning of the statement is that Experian offers a substandard product because it uses "highly flawed" data. The statement directly impugns Experian's ability to perform in its business by questioning the validity of its underlying vehicle data.

Moreover, the statement "can reasonably be interpreted as stating actual fact," not just merely an opinion. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1022 (Ill. 2008); *Solaia*, 852 N.E.2d at 840. Three factors are considered to determine whether a statement is opinion or fact: (1) whether the statement has a precise meaning; (2) whether it is verifiable; and (3) whether its literary or social context suggests it is factual. *Imperial Apparel*, 882 N.E.2d at 1022. While courts consider these factors together, emphasis is placed on verifiability. *Rose v. Hollinger Intern., Inc.*, 889 N.E.2d 644, 648 (Ill. App. Ct. 2008).

Here, all three factors point toward the statement being a factual assertion, not a mere opinion. The statement has a precise meaning—that Experian's auction frame data is flawed, that is, inaccurate—and is verifiable by examining the actual data. The overall context also suggests that a reasonable fact finder could conclude that the statement (that Experian uses "highly flawed" data) was an assertion of fact. *Bryson*,

7

672 N.E.2d at 1220 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). The statement's clear message is that Experian does in fact use inaccurate data. Thus, the allegedly defamatory statement at issue here contains a "provably false factual assertion." *Id.*

Carfax argues that this statement attacks AutoCheck's data sources rather than AutoCheck's product quality, R. 23 at 8, but that is a strained interpretation given that the purpose of AutoCheck's product is to provide customers with data, the data that Carfax attacks as flawed. Accordingly, the statement is actionable as defamation is *per se*.

**B.**

Next, Experian also claims that the two statements declaring that AutoCheck's vehicle history reports will miss "problem vehicles" qualify as defamation *per se*. R. 20 at 8-9 (citing R. 1 ¶¶ 19(c), (p)). The statements at issue from the letter are that "using AutoCheck will allow a significant number of problem vehicles into [Subaru's] program," R. 1 ¶ 19(c), and that "there is a good chance Auto[C]heck will miss a problem vehicle, if this happens, there is a significant probability the consumer will see the problem on the Carfax report. This could cause problems (happened to Nissan this year)," *id.* ¶ 19(p).

Experian believes that these statements impute an inability to perform in the marketplace and prejudice the corporation in its trade. The Court agrees. Viewed in the context of the entire letter, which was sent by Carfax to Subaru, a potential customer, with the intent to dissuade Subaru from contracting with Experian, the

8

statements naturally and obviously refer to Experian and impute that Experian lacks the ability to perform in its business because "problem vehicles" will be missed.

Nor can the "problem vehicle" statements be innocently construed as not impugning Experian's professional competence, at least not if reasonable inferences are drawn in Experian's favor, as they must be at this stage. The terms "significant number" and "problem vehicle," and the labeling of the probability as a "good chance," are all naturally interpreted as accusing AutoCheck of using inferior and inaccurate data to the point of loss of accreditation and competence. These statements could reasonably be found as defamatory *per se* and according to Experian, all of these statements are false. R. 20 at 12.

Moreover, the statements are not mere opinions rather than assertions of fact. Applying the three part test discussed above, the statements have a relatively precise meaning (first factor)—that there is a "good chance" AutoCheck will miss "problem vehicles" in its report that Carfax's report will not. Although a term like "problem vehicle" may not have a precise meaning in the abstract, it has a reasonably precise meaning in the context of the letter. For example, accompanying the statements in the letter, Carfax included an exhibit that compares the number of vehicles AutoCheck's records identified as "problem vehicles" to the number of vehicles Carfax's records did. R. 1, Exh. C. The exhibit identifies numerous vehicle factors (*e.g.*, damaged title, manufacture buyback title, flood damage title, frame damage record, recycling record, and unique odometer readings) that, if applicable to a particular vehicle, make it a "problem vehicle." *Id*. Thus, the letter, when read in context with the exhibit, provides

clear factual content that demonstrates the meaning of "problem vehicle." Also, the statements can be verified (second factor) by examining AutoCheck's records on problem vehicles. Finally, the literary and social context of the statements (third factor) further supports finding these statements to be factual assertions rather than opinions. Carfax's inclusion of an exhibit with detailed data on the number of "problem vehicles" AutoCheck allegedly failed to identify shows that the statements are factually provable assertions. Accordingly, these statements are actionable defamatory *per se* statements of fact.

## C.

In contrast to the above statements, the statements accusing Experian of "not hav[ing] strong brand characteristics," of offering more favorable pricing terms to other dealers than it did to Subaru, and of pursuing "DAB [Dealer Advisory Board] members to rabble rouse and stir up discontent in an attempt to undermine Carfax's integrity," are neither precise nor verifiable, and constitute assertions of opinion. R. 1 ¶ 19. All three statements are broad and capable of having multiple meanings because they do not identify specific characteristics of, or acts by, Experian, and because the precise meaning of such general terms—"strong brand characteristics," "favorable pricing terms," and "rabble rous[ing]"—could easily differ from one person to another.

In addition, these statements are not verifiable because they are "shapeless" and fail to indicate where an investigation could begin. *Rose*, 889 N.E.2d at 653 (holding that a statement that an employee had damaged a newspaper's finances was not verifiable because it failed to identify what caused the damage and would require

investigation into all aspects of the employee's duties). Here, like in *Rose*, Carfax's statements about Experian lack the specificity necessary for verification. The statements do not reference anything specific that could be investigated and would require examining all aspects of Experian's AutoCheck brand, contractual agreements with dealers, and interactions with the Dealer Advisory Board. Thus, these statements are expressions of opinion as they lack the specificity and factual content necessary to be verifiable and deemed factual assertions. Accordingly, these three statements are not defamatory *per se*.

### IV.

For the reasons discussed above, Carfax's motion to dismiss is granted in part and denied in part. R. 10. Status hearing of July 10, 2012, at 8:30 a.m., remains as previously scheduled.

ENTERED:

*Edmond E. Chang*
Honorable Edmond E. Chang
United States District Judge

DATE: July 5, 2012